# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MARTA ALICIA MEJIA**<br>South Texas Detention Complex<br>566 Veteran Drive<br>Pearsall, Texas 78061;<br><br>**E.G.S., a Minor**<br>7443 River Pike Drive<br>Cypress, TX 77433<br><br>**Plaintiffs**,<br><br>v.<br><br>**U.S IMMIGRATION AND CUSTOMS ENFORCEMENT ("ICE"),**<br>500 12th Street SW Washington, DC 20530;<br><br>**U.S. DEPARTMENT OF HOMELAND SECURITY ("DHS"),**<br>245 Murray Lane SW Mailstop 0485<br>Washington, DC 20528-0075;<br><br>**U.S. CUSTOMS AND BORDER PROTECTION ("CBP"),**<br>1300 Pennsylvania Ave. NW<br>Washington, DC 20229;<br><br>**U.S. CITIZENSHIP AND IMMIGRATION SERVICES ("USCIS"),**<br>20 Massachusetts Avenue NW<br>Washington, D.C. 20529;<br><br>**THOMAS HOMAN, ACTING DIRECTOR OF ICE,**<br>500 12th Street SW Washington, D.C. 20536;<br><br>**DANIEL BIBLE, SAN ANTONIO FIELD OFFICE DIRECTOR, ICE**<br>San Antonio Field Office<br>1777 NE Loop 410 Floor 15<br>San Antonio, TX, 78217;<br><br>**ANDREW HURON, SAN ANTONIO ASSISTANT FIELD OFFICE DIRECTOR, ICE**<br>San Antonio Field Office<br>1777 NE Loop 410 Floor 15<br>San Antonio, TX, 78217; | Case No. _____ |

**RAY CASTRO, WARDEN, SOUTH TEXAS DETENTION COMPLEX**
South Texas Detention Complex
566 Veteran Drive,
Pearsall, Texas 78061

**KIRSTJEN NIELSEN, SECRETARY OF DHS,**
500 12th Street SW Washington, DC 20536;

**JEFFERSON BEAUREGARD SESSIONS III, ATTORNEY GENERAL OF THE UNITED STATES,**
950 Pennsylvania Avenue NW Washington, D.C. 20530;

**L. FRANCIS CISSNA, DIRECTOR OF USCIS,**
20 Massachusetts Avenue NW Washington, D.C. 20529;

**KEVIN K. MCALEENAN, ACTING COMMISSIONER OF CBP,**
1300 Pennsylvania Ave, NW Washington, DC 20229;

**Defendants**.

# PETITION FOR HABEAS CORPUS AND COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MONETARY RELIEF

Marta Alicia Mejia, and her son E.G.S., a minor child adopted since infancy, by and through counsel, file this civil action and petition for habeas corpus against Defendants U.S. Immigration and Customs Enforcement ("ICE"); U.S. Department of Homeland Security ("DHS"); U.S. Customs and Border Protection ("CBP"); U.S. Citizenship and Immigration Services ("USCIS"); Thomas Homan, Acting Director of ICE; Daniel Bible, San Antonio Field Office Director, ICE; Andrew Huron, San Antonio Assistant Field Office Director, ICE; Ray Castro, Warden, South Texas Detention Complex; Kirstjen Nielsen, Secretary of DHS; Jefferson Beauregard Sessions III, Attorney General of the United States; L. Francis Cissna, Director of USCIS; and Kevin K. McAleenan, Acting Commissioner of CBP; (collectively, "Defendants")

to vindicate their substantive and procedural due process rights under the Fifth Amendment of the U.S. Constitution and their rights under the International Convention on Civil and Political Rights, the United Nations Convention Relating to Status of Refugees, 8 U.S.C. § 1158, and the International Child Abduction Convention. In support, Ms. Mejia and E.G.S. state as follows:

## INTRODUCTION

This complaint challenges the United States Government's forcible and continued separation of Ms. Mejia from her son E.G.S., adopted since infancy. Ms. Mejia is the sole primary caregiver, legal guardian, and biological great-grandmother of E.G.S., a five-year old boy who has been in Ms. Mejia's custody since infancy. Ms. Mejia and E.G.S. bring this action to halt Ms. Mejia's pending deportation until she has a full and fair opportunity to seek asylum in this country. That opportunity, guaranteed to her by statute, has been violated by the forcible separation of Ms. Mejia from E.G.S. The shock of the separation from her adopted son rendered her unable to meaningfully prepare for and participate in her asylum proceedings, resulting in an erroneous negative credible fear determination. E.G.S., who was abused by his foster mother while in ORR custody, has been irreversibly traumatized and continues to suffer from the separation, manifesting physical symptoms including vomiting, hyperactivity and fearfulness. Ms. Mejia is also a member of the class certified in *Ms. L v. U.S. Immigration & Customs Enf't*, No. 3:18-cv-00428-DMS-MDD at 17 (S.D. Cal. June 26, 2018) ECF No. 82, and as such, Defendants are prohibited from deporting her. Ms. Mejia should be reunited with E.G.S. and her deportation should be stayed.

## JURISDICTION

1. This case arises under the Fifth Amendment to the United States Constitution. The court has jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. § 2241 (habeas jurisdiction); and Art. I., § 9, cl. 2 of the United States Constitution ("Suspension

Clause"). Ms. Mejia is in federal custody for purposes of habeas jurisdiction.

## VENUE

2. Venue is proper under 28 U.S.C. § 1391 because at least one of the Defendants is subject to personal jurisdiction in this district with regards to this action.

## PARTIES

3. Plaintiff Ms. Mejia is a citizen of Honduras. She is the biological great-grandmother, legal guardian, and sole primary caregiver of Plaintiff E.G.S., also a citizen of Honduras.

4. Defendant U.S. Immigration and Customs Enforcement ("ICE") is the sub-agency of DHS that is responsible for carrying out removal orders and overseeing immigration detention.

5. Defendant U.S. Department of Homeland Security ("DHS") has responsibility for enforcing the immigration laws of the United States and is a department of the executive branch of the Government which has been delegated with authority over "unaccompanied minors."

6. Defendant U.S. Customs and Border Protection ("CBP") is the sub-agency of DHS that is responsible for the initial processing and detention of noncitizens apprehended near the U.S. border.

7. Defendant U.S. Citizenship and Immigration Services ("USCIS") is the sub-agency of DHS that, through its Asylum Officers, conducts interviews of certain individuals apprehended at the border to determine whether they have a credible fear of persecution and should be permitted to apply for asylum.

8. Defendant Thomas Homan is sued in his individual capacity and his official capacity as the Director of ICE.

9. Defendant Daniel Bible is sued in his individual capacity and his official capacity as Field Office Director, San Antonio Field Office, ICE.

10. Andrew Huron is sued in his individual and official capacity as Assistant Field Office Director, San Antonio Field Office, ICE.

11. Defendant Kirstjen Nielsen is sued in her individual capacity and official capacity as the Secretary of the Department of Homeland Security. In this capacity, she directs each of the component agencies within DHS: ICE, USCIS, and CBP. As a result, Respondent Nielsen has responsibility for the administration of the immigration laws pursuant to 8 U.S.C. § 1103 and is empowered to grant asylum or other relief.

12. Defendant Jefferson Beauregard Sessions III is sued in his individual capacity and his official capacity as the Attorney General of the United States. At all times relevant to this Complaint, he had responsibility for the administration of the immigration laws pursuant to 8 U.S.C. § 1103, oversaw the Executive Office of Immigration Review, was empowered to grant asylum or other relief.

13. Defendant L. Francis Cissna is sued in his individual and official capacity as the Director of USCIS.

14. Defendant Kevin K. McAleenan is sued in his individual and official capacity as the Acting Commissioner of CBP.

15. Defendant Ray Castro is sued in his individual and official capacity as Warden, South Texas Detention Complex, Pearsall, Texas.

## RELEVANT FACTS

16. Ms. Mejia is a 60-year old citizen of Honduras. She is the adoptive mother and biological great-grandmother of Plaintiff E.G.S. and has been his legal guardian since he was born. Ms. Mejia has several other children, grandchildren, and great-grandchildren.

17. Ms. Mejia's daughter was unable to care for her own daughter, Ana Debora Mejia, so Ms. Meija took legal custody of her granddaughter. Ana Debora was the victim of multiple sexual assaults, including a rape when she was eighteen years old that resulted the birth of E.G.S. As Ana Debora's child, E.G.S. is Ms. Meija's biological great-grandson, but Ms. Mejia has raised him as her son since infancy. E.G.S. was born prematurely and required extensive medical care, which his biological mother was unable to provide. Ana Debora therefore ceded custody of E.G.S. to Ms. Mejia shortly after he was born and has not cared for him since. E.G.S. refers to Ms. Mejia as "Mamita" ("Mommy").

18. On or about May 2018, Ms. Mejia and E.G.S. fled Honduras out of fear that they would be harmed by the notoriously violent 18th Street Gang as a result of two distinct incidents that Ms. Mejia witnessed and subsequent direct threats on their lives.

19. In or about 2017, armed members of the 18th Street Gang robbed Ms. Mejia's son-in-law's motorcycle repair business in Honduras. Ms. Mejia, who resided next door to the repair shop along with E.G.S., was home when the robbery occurred and was identified by gang members as a witness to their crime. During the course of the armed robbery, gang members threatened to kill everyone in Ms. Mejia's family because she witnessed the assault. Shortly after the traumatic event, Ms. Mejia's son-in-law suffered a heart attack and died.

20. Also in 2017, E.G.S.'s uncle Manuel Santos, who lived next door to Ms. Mejia and E.G.S., was killed by gang members in a drug deal. Finally, in or about December 2017, Ms. Mejia was caught in crossfire during a shoot-out between gang members and the police and narrowly escaped harm. Following these incidents, Ms. Mejia continued to feel that the 18th Street Gang posed a direct threat to her physical safety and the safety of her family, including E.G.S.

21. Because of this pattern of harm and violence and the direct threat to the lives

of her family, as soon as she was able to make her escape, on or about May 2018, Ms. Mejia and E.G.S. fled Honduras in an effort to obtain asylum in the U.S. for herself and E.G.S.

22. Upon entry into the U.S., on or about June 1, 2018, agents from Defendant Customs and Border Protection ("CBP") forcibly separated E.G.S. from Ms. Mejia, leaving Ms. Mejia disoriented and in shock at the loss of her child.

23. On June 20, 2018, by Executive Order 13841 ("Executive Order"), President Trump ostensibly ended his administration's policy of forcibly separating children from their families at the border. Nonetheless, without any assertions of abuse, neglect, or parental unfitness, and with no hearings of any kind, the Government continues to detain parents and children separated prior to the issuance of the Executive Order, including Ms. Mejia.

24. Numerous organizations, mental health professionals, and the American Academy of Pediatrics have been vocal in criticizing the forcible separation policy. Forced separation from parents and other caregivers causes severe trauma to children, especially those who are already traumatized due to conditions in their homeland. The resulting cognitive and emotional damage from separation can be permanent. The Trump Administration acknowledged as much by ending the practice with the Executive Order on June 20, 2018.

25. Ms. Mejia's forcible separation from E.G.S. was a traumatic event which caused her significant psychological distress and shock. Meanwhile, E.G.S continues to suffer every day he is separated from his "Mamita."

26. During this period of intense psychological trauma, Ms. Mejia applied for asylum in the U.S. On June 15, 2018, Defendant USCIS conducted a credible fear interview of Ms. Mejia.

27. Having been forcibly separated from E.G.S. only two weeks earlier, and still lacking any idea where he was, Ms. Mejia was in a state of shock and confusion during her

interview. She struggled to focus and respond to the interviewer's questions and was unable to describe fully the threats and acts of violence she experienced in Honduras. These threats and acts of violence, considered cumulatively, support her credible fear that the perpetrators of the violence will seek to harm Ms. Mejia or E.G.S. if they return to Honduras.

28. Without a full understanding of Ms. Mejia's experiences, and having failed to question her adequately or to sufficiently consider the psychological trauma affecting her, the Asylum Officer found that Ms. Mejia lacked a credible fear of persecution. As a result, Ms. Mejia is scheduled to be deported on or about September 7, 2018.

29. Ms. Mejia's deportation would further traumatize E.G.S., who continues to suffer severe and irreparable psychological trauma while apart from his "Mamita." Following the separation, E.G.S. was placed in a foster family, where according to his accounts he was abused by his foster mother (who he called his "foster tía"). He was eventually released to Ms. Mejia's son and daughter-in-law (a U.S. citizen), whom he does not know well. Ms. Mejia's daughter-in-law reports that after she took custody of E.G.S., he vomited often, slept for long periods of time and generally seemed exhausted and fearful. Ms. Mejia describes E.G.S. as a generally calm child prior to the separation, but Ms. Mejia's daughter-in-law states that since the separation and subsequent traumatic events he has been hyperactive. He asks about Ms. Mejia constantly and cries for her at night. Aside from reporting that his foster mother beat him, when asked for further details about his time in foster care before he came to live with Ms. Mejia's son and daughter-in-law, he gets acts scared and does not respond.

30. The Due Process Clause of the U.S. Constitution's Fifth Amendment does not permit the Government to keep children from their primary caregivers without justification or even a hearing. Federal statutes, including the Immigration and Naturalization Act, the Convention Against Torture, and associated implementing regulations, require that an asylum

applicant's credible fear determination be made only after a full and fair proceeding.

31. Ms. Mejia was denied such a right due to the trauma and suffering caused by being forcibly separated from E.G.S. at the border.

32. Furthermore, as an adult parent of a minor child who was detained in immigration custody by DHS and separated from her minor child, Ms. Mejia is a member of the class certified in *Ms. L v. U.S. Immigration & Customs Enf't*, No. 3:18-cv-00428-DMS-MDD at 17 (S.D. Cal. June 26, 2018) ECF No. 82.[1]  The Ninth Circuit court has prohibited Defendants from deporting *Ms. L* class members without their children absent the individual's affirmative, knowing, and voluntary waiver of that right, or a determination that the parent is unfit.  There has been no such waiver or determination in this case.

33. As a result of the Defendants' actions in this case, Ms. Mejia is facing imminent deportation without a full and fair opportunity to pursue her asylum claim, and in violation of *Ms. L v. ICE*, leaving behind E.G.S., who suffers each day he continues to be separated from his adoptive mother.

34. Given the irreparable and continuous emotional damage caused by Defendants' action, Plaintiffs request a stay of deportation, an immediate reunion with E.G.S., and reconsideration of Ms. Mejia's negative asylum determination.

## CAUSES OF ACTION

### COUNT I
### (Violation of Asylum Statute)

35. All of the foregoing allegations are repeated and re-alleged as though fully set

---

[1] At a minimum, the legal status of Ms. Mejia as a member of the *Ms. L* class is a legal question, and her deportation should be stayed pending determination.  Ms. Mejia joins several non-biological mothers in a motion for clarification of class certification, which will be filed in the Southern District of California.

forth herein.

36. Under United States law, noncitizens fleeing persecution shall have the opportunity to apply for asylum in the United States. *See* 8 U.S.C. § 1225(b)(1) (expedited removal); 8 C.F.R. §§ 235.3(b)(4), 208.30, and 1003.42; 8 U.S.C. § 1158(a)(1). Ms. Mejia has a private right of action to vindicate her and E.G.S.'s right to apply for asylum.

37. Defendants' separation of Ms. Mejia from E.G.S. violates federal asylum law, because it impermissibly infringed upon Ms. Mejia's ability to pursue her asylum claim.

## COUNT II
### (Punishment of Civil Detainee in Violation of Due Process)

38. The U.S. Constitution's Fifth Amendment prohibits punishment of immigrants held in civil detention. *Bell v. Wolfish*, 441 U.S. 520, 538-39 & n.20 (1979).

39. At all times after Ms. Mejia was detained, Defendants and their agents and employees have continuously detained Ms. Mejia pursuant to civil immigration detention statutes or as a person charged with a crime awaiting trial. Defendants have never detained Ms. Mejia as a convicted criminal. Defendants intend to punish Ms. Mejia and E.G.S. by taking the following actions:

    a. forcibly separating them;

    b. maintaining separation indefinitely; and

    c. failing to provide meaningful information to Ms. Mejia about E.G.S.'s well-being, and anticipated reunification.

40. Defendants' foregoing actions punish Plaintiffs regardless Defendants' intent because they are patently excessive in relation to any legitimate objective.

## COUNT III
## (Family Separation in Violation of Substantive Due Process)
## (Against All Defendants Except USCIS Defendants in Their Official Capacities)

41. All of the foregoing allegations are repeated and re-alleged as though fully set forth herein.

42. The Due Process Clause of the U.S. Constitution's Fifth Amendment protects all "persons" on United States soil, including Plaintiffs.

43. Plaintiffs have a liberty interest under the Due Process Clause in remaining together as a family.

44. The separation of Ms. Mejia from E.G.S. violates substantive due process because it furthers no legitimate purpose, not to mention a compelling governmental interest.

## COUNT IV
## (Family Separation in Violation of Substantive Due Process: Supervisory Liability)
## (Against Defendants Homan, Nielsen and Sessions in Their Individual Capacities)

45. All of the foregoing allegations are repeated and re-alleged as though fully set forth herein.

46. The Due Process Clause of the U.S. Constitution's Fifth Amendment protects all "persons" on United States soil, including Ms. Mejia and E.G.S.

47. Plaintiffs have a liberty interest under the Due Process Clause in remaining together as a family.

48. The separation of Ms. Mejia and E.G.S. violates substantive due process because it furthers no legitimate purpose, much less a compelling governmental interest.

## COUNT V

### (Administrative Procedure Act—Arbitrary and Capricious Practice)
### (Against All Defendants Except USCIS Defendants)

49. All of the foregoing allegations are repeated and re-alleged as though fully set forth herein.

50. The APA prohibits agency action that is arbitrary and capricious and contrary to constitutional right.

51. Defendants' separation of Plaintiffs without a compelling justification and without a mechanism, protocol, or system to guarantee their reunification is final agency action that is arbitrary and capricious. It accordingly violates the APA. 5 U.S.C. § 706(2)(A).

## COUNT VI

### Petition for Habeas Corpus Under Treaties of the United States: International Convention on Civil and Political Rights (Claim for Injunctive and Declaratory Relief Against All Defendants in Their Official Capacities)

52. All of the foregoing allegations are repeated and re-alleged as though fully set forth herein.

53. The ICCPR has been signed and ratified by the United States.

54. Under Article 17 of the ICCPR, "[n]o one shall be subjected to arbitrary or unlawful interference with her privacy, family, home or correspondence, nor to unlawful attacks on her honor and reputation." Article 23 states that "family is the natural and fundamental group unit of society and is entitled to protection by society and the State."

55. By forcibly separating Ms. Mejia from E.G.S., Defendants have subjected Ms. Mejia to arbitrary, unlawful, and unjustified interference with her family in violation of the ICCPR.

## COUNT VII

**Petition for Habeas Corpus Under Laws and Treaties of the United States: United Nations Convention Relating to Status of Refugees and 8 U.S.C. § 1158 (Claim for Injunctive and Declaratory Relief Against All Defendants in Their Official Capacities)**

56. All of the foregoing allegations are repeated and re-alleged as though fully set forth herein.

57. The United States is party to the 1967 Protocol Relating to the Status of Refugees and key provisions have been incorporated into U.S. law giving individuals a cause for action for litigation. Under federal law, "any alien who is physically present in the United States or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters), irrespective of such alien's status, may apply for asylum." 8 U.S.C. § 1158.

58. Because the right to seek asylum and the definition of refugee, which stems from an international treaty, is directly incorporated into federal law, it creates a legal cause for action for Plaintiffs.

59. By interfering with Ms. Mejia's right to be with her family, Defendants have unlawfully interfered with her right to seek asylum and punished her for doing so by traumatically separating her from her family.

## COUNT VIII
## PUNITIVE DAMAGES
**(Against Defendants Homan, Nielsen, Sessions, Cissna, McAleenan, Brooks, Azar, and Lloyd in Their Individual Capacities)**

60. Based on the foregoing, Plaintiffs are entitled to punitive damages because Defendants acted with willful indifference to the laws that protect Plaintiffs' constitutional rights.

## COUNT IX
## ATTORNEYS' FEES

61. Based on the foregoing, Plaintiffs are entitled to attorneys' fees under all applicable laws.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court:

A. Declare the separation of Ms. Mejia from E.G.S. to have unlawfully interfered with her right to pursue an asylum claim in the United States;

B. Enjoin Defendants from removing Ms. Mejia from the country until she is reunited with E.G.S. and given a new opportunity to pursue her asylum claims;

C. Preliminarily and permanently enjoin Defendants from continuing to separate Ms. Mejia and E.G.S and ordering that Ms. Mejia be released from detention pending further proceedings in order to care for her minor child;

D. Award compensatory damages to Plaintiffs, including pain and suffering arising from the separation between Ms. Mejia and E.G.S.;

E. Award punitive damages for Defendants' conscious disregard for Plaintiffs' rights;

F. Require Defendants to pay reasonable attorneys' fees and costs;

G. Order all other relief that is just and proper.

Respectfully submitted this 6th of September, 2018.

/s/Claudia O'Brien

                                                Claudia O'Brien, DC Bar No. 447354
                                                Timilin Sanders, DC Bar No. 989110
                                                Clayton LaForge, DC Bar No. 1033938
                                                LATHAM & WATKINS LLP
                                                555 Eleventh Street, NW
                                                Washington DC 20004
                                                (202) 637-2200
                                                claudia.o'brien@lw.com