UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MARTA ALICIA MEJIA** and **E.G.S.**, a minor,  **Plaintiffs**,  v.  **U.S IMMIGRATION AND CUSTOMS ENFORCEMENT ("ICE"), ET AL.**,  **Defendants**. | Case No. 1:18-cv-02096-PLF  Judge Paul L. Friedman |

## REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

Plaintiffs Marta Alicia Mejia and her five-year-old de facto son, E.G.S., a minor child (jointly, "Plaintiffs") respectfully move for a preliminary injunction enjoining Defendants U.S. Immigration and Customs Enforcement, a federal agency; U.S. Department of Homeland Security, a federal agency; U.S. Customs and Border Protection, a federal agency; U.S. Citizenship and Immigration Services, a federal agency; Thomas Homan, Acting Director, U.S. Immigration and Customs Enforcement; Daniel Bible, San Antonio Field Office Director, ICE; Andrew Huron, San Antonio Assistant Field Office Director, ICE; Kirstjen M. Nielson, Secretary, U.S. Department of Homeland Security; Jefferson Beauregard Sessions III, United States Attorney General; L. Francis Cissna, Director, U.S. Citizenship and Immigration Services; and Kevin K. McAleenan, Acting Commissioner, U.S. Customs and Border Protection (collectively, "Defendants") to vindicate their substantive and procedural due process rights under the Fifth Amendment of the U.S. Constitution and their rights under the International Convention on Civil and Political Rights, the United Nations Convention Relating to Status of Refugees, 8 U.S.C. § 1158, and the International Child Abduction Convention. In support, Plaintiffs state as follows:

1

**OVERVIEW**

Defendants claims that Ms. Mejia is not a member of the *Ms. L* class and is not entitled to the reunification order and stay of deportation entered in that case. *See Ms. L. v. ICE*, No. 18-cv-00428 DMS (MDD), 2018 WL 3129486 (S.D. Cal. June 26, 2018). But as E.G.S.'s adoptive mother and legal guardian, Ms. Mejia is an "adult parent" within the meaning of the *Ms. L* class and entitled to the same classwide relief.

Contrary to what Defendants argue, Plaintiffs will likely succeed on their claims. Defendants' actions so fundamentally violate due process that they indeed shock the conscience, and contrary to Defendants' claims, the Trafficking Victims Protection Reauthorization Act ("TVPRA") does not require mandatory separation merely because Ms. Mejia is not E.G.S.'s biological mother. To prevent further irreparable harm, this Court should order Plaintiffs reunited and afford them the opportunity to meaningfully pursue asylum.

*To be sure*, Plaintiffs acknowledge that Judge Sabraw may be better-positioned to determine applicability of Plaintiffs to the class in *Ms. L* and do not oppose transfer to the Southern District of California if the court there is the proper jurisdiction to lodge this challenge. The irreparability of the harm that Plaintiffs would have suffered had they not filed the Temporary Restraining Order before this Court would have been immediate and irreparable, as Ms. Mejia was scheduled for deportation the morning after the motion was filed. Furthermore, it is Plaintiffs' understanding that the Government intends to deport Ms. Mejia as soon as the stay of her removal is lifted (i.e., as early as this coming Wednesday, September 26, 2018). To that end, Plaintiffs request that the Court stay removal pending either: resolution of the motion for the preliminary injunction in this Court, or the transfer of the action to the Southern District of California.

**ARGUMENT**

**I.   THIS COURT HAS JURISDICTION**

Defendants' jurisdictional arguments are flawed in several respects. As a threshold matter, this Court unquestionably has jurisdiction over the substantive due process claims at the heart of Plaintiffs' Motion. See *Jacinto-Castanon de Nolasco v. U.S. Immigration & Customs Enf't*, 319 F.Supp.3d 491, 498 (D.D.C. July 19, 2018). Defendants assert that this Court has no jurisdiction over their parole decisions with respect to Ms. Mejia, but in fact, several analogous cases have noted that courts have the ability to review some aspects of Defendants' decisions regarding parole. See *Ms. L v. ICE*, 302 F. Supp. 3d 1149, 1158-59 (S.D. Cal. 2018); see also *Damus v. Nielsen*, No. 18-cv-00578, Dkt. No. 34, at 9-1 (D.D.C. July 2, 2018) (discussing this Court's jurisprudence permitting review of parole methodologies that do not require review of individual parole decisions). While individuals may not ask for judicial review of the agency's decision regarding parole, individuals can challenge the scope of the agency's authority. See *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001); *R.I.L.-R. v. Johnson*, 80 F. Supp. 3d 164, 176-77 (D.D.C. 2015). In other words, where the conduct is "allegedly not even authorized . . . the [C]ourt is not enjoining the operation of [the statute]." Id. at 184 (citing *Rodriguez v. Hayes*, 591 F.3d 1105, 1120 (9th Cir. 2010)). Finally, Defendants contest this Court's jurisdiction over Ms. Mejia's habeas claims because Ms. Mejia is not detained in this district, but even if so, Ms. Mejia's claim to be reunited with E.G.S. is not a "core challenge," subject to the default rules of normal habeas. See *Ms. L. v. ICE*, 302 F. Supp. 3d 1149, 1158 (S.D. Cal. 2018).

## II.   NO HEIGHTENED BURDEN OF PROOF APPLIES

Defendants incorrectly assert that Plaintiff's petition for a mandatory injunction should be subject to heightened scrutiny because it allegedly goes beyond maintaining the status quo. Opp. at 12-13. But for families separated at the border, the status quo is family integrity, as this Court has recognized. *See Jacinto-Castanon de Nolasco v. U.S. Immigration & Customs Enf't*, 319 F. Supp. 3d 491, 498 (D.D.C. July 19, 2018). Because Ms. Mejia has contested her separation from E.G.S.

3

ever since Defendants took him from her, the requested injunction would restore the status quo, not alter it. And regardless, Defendants' unlawful separation of their and other families would meet any heightened standard. *Id.*

Defendants conspicuously fail to acknowledge at any point in their brief the continuous and permanently damaging harm Plaintiffs suffer on a daily basis due to the separation. *See also* Opp. Section V.E (ostensibly examining the "Balance of Harms" without once mentioning harm to Plaintiffs). It is well established that Defendants' policy of forcibly separating children from their parents causes irreparable harm *every single day*. *See Jacinto-Castanon de Nolasco v. U.S. Immigration & Customs Enf't*, 319 F.Supp.3d 491, 502-503 (D.D.C. July 19, 2018).

### III. MS. MEJIA IS A MEMBER OF THE *MS. L* CLASS AND IS ENTITLED TO THE CLASSWIDE RELIEF ORDERED IN THAT CASE

As Plaintiffs explained in their initial Motion, Ms. Mejia is a member of the class certified in *Ms. L. v. ICE*, No. 3:18-cv-00428-DMS-MDD, 2018 U.S. Dist. LEXIS 107364, at *27 (S.D. Cal. June 26, 2018) (ECF No. 82), and is therefore entitled to be reunited with E.G.S. and to receive a new credible fear interview pursuant to the tentative settlement agreement in that case. *See Ms. L. v. U.S. Immigration & Customs Enf't*, No. 3:18-cv-00428-DMS-MDD (S.D. Cal. June 26, 2018) (ECF No. 220-1) (proposing a process to re-interview class members).

Defendants object that because Ms. Mejia is not E.G.S.'s biological mother, she is not an "adult parent" for purposes of *Ms. L* and is outside the class. *See* Opp. at 2.[1] But the Ms. L. ruling is in no way limited to biological parents. *Id.* Notably, the Ms. L. court expressly excluded certain

---

[1] Defendants further claim, without citation, that "at the time that Ms. Mejia unlawfully entered the United States, she admitted that she was not E.G.S.'s mother and had no paperwork to establish her relation to E.G.S." That admission appears nowhere in the evidence available to Plaintiffs and their counsel, and in fact, Plaintiffs' initial motion included ample documentation of Ms. Mejia's relation with E.G.S. *See also* Dkt. 1-13, Declaration of Marta Alicia Mejia ¶ 14 (stating that government personnel referred to E.G.S. as Ms. Mejia's "son").

4

categories of parents from the class, but did not so exclude adoptive, de facto, or otherwise non-biological parents. *Id.* at *17, *28 n.10 (excluding "parents with criminal history or communicable disease, or those apprehended in the interior of the country" or subject to the President's executive order prohibiting family separations after June 20, 2018). In subsequently ordering Defendants to reunite class members and their children, the Ms. L court repeatedly indicated that its injunction was meant to mitigate the suffering of separated "families" and "loved ones" and never once limited its concern to only biological parents and their children. *See id.* at *3-6, *11-15, *22, *25, *27-28. Accordingly, the fact that Ms. Mejia is not E.G.S.'s biological mother does not exclude her from the class. At a minimum, the legal status of Ms. Mejia as a member of the Ms. L class is a legal question, and her deportation should continue to be stayed pending that determination.

### IV. PLAINTIFFS' SEPARATION SHOCKS THE CONSCIENCE AND VIOLATES PLAINTIFFS' DUE PROCESS RIGHTS

Defendants strive in vain to deny the obvious constitutional violations inherent in Plaintiffs' separation. Some of their arguments retread familiar ground. For example, they cite several cases involving immigration detainees and convicts who have been separated from their families to argue that Plaintiffs have no constitutional right to familial association in detention. *See* Opp. at 21-22 (citing several cases, including *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003), *Aguilar v. ICE*, 510 F.3d 1, 22 (1st Cir. 2007) and *Milan-Rodriguez v. Sessions*, No. 116CV01578AWISABHC, 2018 WL 400317, at *8-10 (E.D. Cal. Jan. 12, 2018)). But as others have explained in detail, each of those cases is distinguishable from a situation like that before this Court, in which a family seeking asylum was detained together and forcibly separated. *See Ms. L. v. ICE*, 302 F.Supp.3d 1149, 1163 (S.D. Cal. 2018).

Perhaps realizing the weakness in their broader constitutional argument, Defendants rely heavily on the TVPRA, arguing that Plaintiffs' separation was legally required because E.G.S.

arrived without a "parent or legal guardian." Opp. at 8, 19-20 (discussing 6 U.S.C. § 279(g)(2)). Defendants' attempt to use the TVPRA to justify keeping a five-year-old child from the only mother he has ever known is bold, to say the least. *See generally King v. Burwell*, 135 S. Ct. 2480, 2493 (2015) ("We cannot interpret federal statutes to negate their own stated purposes."); H.R. REP. 110-430(I), 57 (TVPRA enacted to ensure "better care and custody of unaccompanied alien children").

But even assuming, for the sake of argument, that Ms. Mejia is not E.G.S.'s "parent" within the meaning of the statute, there can be no question that she is E.G.S.'s "legal guardian." Defendants appear to concede, at a minimum, that Ms. Mejia is E.G.S.'s grandmother.[2] *See* Opp. at 12, 13, 19, 22-23. And in fact, as detailed in Plaintiffs' initial Motion, Ms. Mejia has had legal custody of E.G.S. continuously from infancy. Defendants never dispute that their relationship is bona fide. And aside from a cryptic reference to the need for a "*verifiable* legal guardian," Op. at 20 (emphasis added), Defendants do not claim that they or any government official was worried E.G.S. was being trafficked at any point, nor do they claim or discuss any evidence that would call Ms. Mejia's fitness into question. And they do not claim, nor does any of the underlying evidence show, that Defendants or their representatives even inquired into Plaintiffs' relationship before separating them. *See also* Dkt. 1-13, Decl. of Marta Alicia Mejia ¶ 14 (stating that government personnel referred to E.G.S. as Ms. Mejia's "son"). In effect, Defendants argued that under the TVPRA, they had discretion to deem E.G.S. "unaccompanied" simply because Plaintiffs entered the United States clandestinely and asked for asylum. That rationale is obviously inadequate, and it is also belied by

---

[2] As explained in Plaintiffs' initial Motion, in addition to being E.G.S.'s legal guardian and de facto mother, Ms. Mejia is his biological great-grandmother and adoptive grandmother. Brief at 2. It is unclear why Defendants are willing to accept that Ms. Mejia is E.G.S.'s grandmother, but not his legal guardian, particularly as the same evidence (submitted with Plaintiffs' initial Motion) applies to each relation.

Defendants' own conduct: it applies equally to the families Defendants are currently detaining together in family detention centers. (Defendants do not try to explain the inconsistency.)

Regardless, even if the TVPRA required Defendants' actions – which it did not – Defendants must follow the dictates of due process even if a statute orders otherwise, because "no Act of Congress can authorize a violation of the Constitution." *Almeida-Sanchez v. United States*, 413 U.S. 266, 272 (1973). Defendants' actions violated Plaintiffs' constitutional right to family integrity and plainly "shock the conscience."[3] This Court should reject their effort to use the TVPRA as a fig leaf for their unlawful actions. Similarly, regardless of any statutory provision purportedly to the contrary, Ms. Mejia has a due process right to meaningfully seek asylum, and in turn, she is entitled to a new credible fear interview once she is reunited with E.G.S. and no longer undergoing the acute trauma of separation. *Cf. Ms. L. v. ICE*, No. 18-cv-00428 DMS (MDD), 2018 WL 3129486 at *8 (S.D. Cal. June 26, 2018) (in analyzing plaintiffs' likelihood of success on their due process claims, noting as "context" that family separation "has also had a profoundly negative effect on the parents' criminal and immigration proceedings, as well as the childrens' immigration proceedings.").

## V. PLAINTIFFS WILL SUFFER IRREPARABLE HARM IF THEY ARE NOT REUNITED

Defendants conspicuously fail to acknowledge at any point in their brief the continuous and permanently damaging harm Plaintiffs suffer on a daily basis due to the separation. *See also* Opp.

---

[3] *See, e.g., Ms. L*, 302 F. Supp. 3d at 1167 (a policy of purposefully separating immigrant families "is brutal, offensive, and fails to comport with traditional notions of fair play and decency"); *M.G.U. v. Nielsen*, *United Nations Office of Human Rights Commissioner, Letter* at 2, Dkt. No. 13-9 ("Detention of children is punitive, severely hampers their development, and in some cases may amount to torture . . . . Children are being used as a deterrent to irregular migration, which is unacceptable"); *M.G.U. v. Nielsen*, *American Medical Association Letter* (June 19, 2018), Dkt. No. 13-13 at 39 ("It is well known that childhood trauma and adverse childhood experiences created by inhumane treatment often create negative health impacts that can last an individual's entire lifespan. Therefore, the AMA believes strongly that, in the absence of immediate physical or emotional threats to the child's well-being, migrating children should not be separated from their parents or caregivers.").

Section V.E (ostensibly examining the "Balance of Harms" without once mentioning harm to Plaintiffs). As Plaintiffs and multiple medical experts have explained, Defendants' practice is doing untold harm to E.G.S. and hundreds of children across the country. In fact, E.G.S. has displayed acute signs of trauma from the separation.

## VI. THE HARM TO PLAINTIFFS OUTWEIGHS ANY PURPORTED PUBLIC INTEREST IN SEPARATING THEM

As Plaintiffs and multiple medical experts have explained, Defendants' practice is doing untold harm to hundreds of children across the country.  The harms that Defendants are inflicting will last a long time, perhaps forever, as children cope with the trauma and terror of being separated from their parents while detained in a foreign country.  Plaintiffs' requested injunction would merely restore the status quo that has existed for years.

Defendants object that injunctive relief in this case would undermine the public's interest in enforcement of the immigration laws and prevention of human trafficking. But Defendants will remain free to prosecute those who unlawfully enter the United States and institute removal proceedings against them regardless of the result of this case.  Nor do Defendants explain how reuniting E.G.S. with his lifelong legal guardian and biological great-grandmother, whose fitness to care for him is apparently undisputed, would frustrate the public interest in preventing human trafficking. Meanwhile, the public has an interest in ensuring that Defendants respect the rights of immigrants to family integrity while their removal proceedings – or in this case, asylum proceedings – are pending, and to meaningfully pursue asylum in accordance with law.  See *Newby*, 838 F.3d at 12 (holding that there is a substantial public interest "in having governmental agencies abide by the federal laws that govern their existence and operations"). There can be no genuine dispute that the public interest weighs heavily in Plaintiffs' favor.

## **CONCLUSION**

For the reasons discussed above, Plaintiffs respectfully request that the Court grant the motion for preliminary injunction.

US-DOCS\103381020.3

September 24, 2018                           Respectfully submitted,

                                             */s/Claudia O'Brien*
                                             Claudia O'Brien, DC Bar No. 447354
                                             Timilin Sanders, DC Bar No. 989110
                                             Clayton LaForge, DC Bar No. 1033938
                                             LATHAM & WATKINS LLP
                                             555 Eleventh Street, NW
                                             Washington DC 20004
                                             (202) 637-2200
                                             claudia.o'brien@lw.com

                                             *Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

On September 24, 2018, I filed the foregoing document with the Clerk of the Court for the U.S. District Court for the District of Columbia, using the electronic case filing system of the Court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

>
> */s/Claudia O'Brien*
> Claudia O'Brien, DC Bar No. 447354
> Timilin Sanders, DC Bar No. 989110
> Clayton LaForge, DC Bar No. 1033938
> LATHAM & WATKINS LLP
> 555 Eleventh Street, NW
> Washington DC 20004
> (202) 637-2200
> claudia.o'brien@lw.com
>
> *Attorneys for Plaintiffs*